[Cite as *State v. McCreary*, 2022-Ohio-2899.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Earle E. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21-COA-026 |
| TODD M. MCCREARY | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:      Criminal appeal from the Ashland County Municipal Court, Case No. 20CRB01435


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      August 17, 2022

APPEARANCES:

For Plaintiff-Appellee

RICHARD D. WOLFE, II
DIRECTOR OF LAW
1213 East Main St.
Ashland, OH 44805

For Defendant-Appellant

JOSEPH P. KEARNS, JR.
153 West Main Street
Ashland, OH 44805

*Gwin, J.,*

{¶1} Defendant-appellant Todd M. McCreary ["McCreary"] appeals his convictions and sentences after a jury trial in the Ashland County Municipal Court.

*Facts and Procedural History*

{¶2} McCreary is the owner of Cleveland Sandusky Jellystone, a camping ground park in northern Ashland County. He and his wife have owned the park for about 14 years. The park employs about 30 people.

{¶3} S.A. began working at the campground when she was in high school in June 2018. S.A. had worked there for approximately 2 years. Her duties included cooking, participating in activities, working in the campground store, and dressing up in costumes such as Yogi Bear, Cindy Bear, and Boo Boo Bear. S.A. testified that McCreary would at times assist her in putting on the costume. S.A. also attended an RV show with McCleary after the end of the camping season in January 2020.

{¶4} S.A. had a small business in which she decorated ceramic mugs and sold them. T. at 25.[1] A co-worker at the camp had purchased two such mugs from S.A. S.A. offered to drop the mugs off at the campground for the co-worker.

{¶5} On October 5, 2020, S.A. drove to the campground. When she arrived, she found the camp store to be closed. Not scheduled to work that day, S.A. had not brought her keys. Having seen McCreary working outside in a place referred to as the "Hole," S.A. drove down to that area and parked her car. S.A. walked up to where McCreary was working and explained her predicament with the mugs. McCreary told S.A. that he would

---

[1] For clarity, the trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

see that the co-worker got the mugs and accompanied S.A. back to her car to retrieve them.

{¶6}  As she opened the passenger side door of her car to retrieve the mugs, S.A. testified that she felt "boxed in" by McCreary explaining that he was behind her with his arm on top of the door.  T. at 29.  When she obtained the mugs from the car, McCreary removed his right arm from the door and took both of the mugs with his right hand.  S.A. testified that McCreary then grabbed the zipper of her oversized fleeced top with his left hand.  S.A. testified that McCreary pulled the zipper down while his whole hand rubbed up against her breast.  T. at 31.  S.A. pulled the zipper back up.  McCreary then pulled the zipper down a second time again rubbing his hand against S.A.'s breast.  T. at 32-33.  S.A. again pulled the zipper up.  McCreary attempted to pull the zipper down a third time; however, S.A. blocked it with her hand.  T. at 33.  Neither S.A. nor McCreary spoke during this incident.  S.A. walked around to the driver side of her car, got in and drove away.

{¶7}  As she drove back to her college in Cleveland, S.A. received two text messages from McCreary.  (State's Exhibit 1).  The first message read, "My god I wish that zipper was longer.  You can text me a picture."  T. at 38.  The second text message read, "I should be sorry but I wanted to do that for a long time.  Please keep this to yourself.  Sorry."  T. at 39.

{¶8}  The next day, S.A. called Mrs. McCreary and told her what had happened.  T. at 43.  S.A. explained to Mrs. McCreary that she would not be returning to work because of the incident.  S.A. did not contact the police.

{¶9}  Deputy Daniel Saylor of the Ashland County Sheriff's office was dispatched to respond to a disturbance at the campground on October 11, 2020.  S.A.'s father,

brother, and roommate had gone to the campground that day to return S.A.'s keys. After speaking with S.A.'s father, Deputy Saylor asked him to have her come to the campground to make a report because she was an adult. T. at 101. S.A. arrived with her mother. S.A. told Deputy Saylor what had happened on October 5, 2020. Nothing in S.A.'s statement to Deputy Saylor mentioned that McCreary touched or rubbed against S.A.'s breast. T. at 111-112.

{¶10} Deputy Saylor spoke to Mrs. McCreary who completed a written statement and informed the deputy that McCreary was not there at the time. She told the deputy that she would tell her husband that Deputy Saylor would like to speak with him.

{¶11} On November 2, 2020, Deputy Saylor sent an email to McCreary. (State's Exhibit 2). McCreary responded via email on November 3, 2020 as follows, "Hello, Deputy Saylor, it was a fleece pullover with a three-inch zipper, nothing was exposed, and I did not touch her or any body part. I am sure that she showed you my texts, which meant nothing. I did nothing illegal and I stand by that, Todd McCreary." T. at 106.

{¶12} McCreary testified in his own defense. McCreary admitted that he pulled the zipper down on S.A.'s top two times; however, he denied making a third attempt. McCreary denied that he touched or rubbed against S.A.'s breast. T. at 145; 147. McCreary believed that S.A. had a crush on him and was flirting with him. This was his perception, from various things, including her calling him to have him fix a flat tire on her car when she was 45 minutes away, as well as other actions, such as showing him attention. T. at 140; 145. McCreary explained the text messages as just wanting to "flirt back for a while." T. at 151. He also indicated that he did not want his wife to know what had occurred. Id.

{¶13} McCreary testified that he was "hitting on her in a poor way." T. at 158. He pulled the zipper down in an attempt to show S.A. that "I liked her back, I don't know." T. at 159. McCreary testified that he made multiple attempts to pull the zipper down because he believed S.A. was flirting with him by pulling the zipper back up. T. at 159. McCreary admitted that he had wanted to "hit" on S.A. for "a while." T. at 163.

{¶14} McCreary was charged with Sexual Imposition, in violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree, and Disorderly Conduct, in violation of R.C. 2917.11(A)(5), a minor misdemeanor. A trial was held to a jury in the Ashland Municipal Court on October 20, 2021 on the Sexual Imposition charge and to the court on the Disorderly Conduct charge. The jury and the court found McCreary guilty of the respective charges.

*Assignments of Error*

{¶15} McCreary raises four Assignments of Error,

{¶16} "I. THE TRIAL COURT ERRED WHEN IT DENIED GRANTING THE RULE 29 MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE.

{¶17} "II. THE PROSECUTION COMMITTED MISCONDUCT DURING THE TRIAL AND IN CLOSING ARGUMENTS.

{¶18} "III. THE JURY VERDICT OF GUILT [sic.] ON THE CHARGE OF SEXUAL IMPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND DUPLICATIVE OF THE COURT'S VERDICT OF GUILT [sic.] FOR DISORDERLY CONDUCT, AN OFFENSE OF SIMILAR IMPORT UNDER R.C. 2941.25.

{¶19} "IV. COUNSEL FOR APPELLANT WAS INEFFECTIVE FOR FAILING TO SEEK A LESSER INCLUDED OFFENSE OF DISORDERLY CONDUCT."

I.

{¶20}  In his First Assignment of Error, McCreary contends that the trial court erred in not granting his Crim. R. 29 motion for acquittal at the conclusion of the state's case.[2]

**Standard of Review**

{¶21}  In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter,* 72 Ohio St.3d 545, 553, 651 N.E.2d 965(1995);  *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), *superseded by State constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).*

*Sufficiency of the Evidence*

{¶22}  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶23}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574

---

[2] McCreary limits his argument to the charge of Sexual Imposition. *See*, Appellant's brief at 7-9.

N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that McCreary was guilty beyond a reasonable doubt of sexual imposition.*

{¶24} McCreary was found guilty by the jury of Sexual Imposition in violation of R.C. 2907.06(A)(1),

(A) No person shall have sexual contact with another, not the spouse

of the offender; cause another, not the spouse of the offender, to have

sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

**{¶25}** Ohio law defines "sexual contact" as, " any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶26}** "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

**{¶27}** McCreary first contends that the state did not present evidence that S.A. was not his spouse.

**{¶28}** McCreary testified that he was married at the time of the incident on October 5, 2020. His wife, Pamela McCreary, testified on his behalf at trial. T. at 123. McCreary testified that he sent the second text message to S.A. because he did not want his wife to know what had occurred. T. at 151. McCreary points to no evidence in the record that he defended himself on the basis that S.A. was his spouse.

**{¶29}** If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio

St.3d 259, 273, 574 N.E.2d 492 (1991), at paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).*

{¶30} "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks*, at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820.(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt*, 164 Ohio St. at 331, 130 N.E.2d 820.

{¶31} In the case at bar, the jury could infer from the fact that McCreary was married to Pamela McCreary on October 5, 2020 that S.A. was not his spouse.

{¶32} McCreary next contends that the state failed to prove he intentionally touched the erogenous zone of S.A. and did so for his personal satisfaction.

{¶33} S.A. testified that on two occasions McCreary unzipped her fleece top. S.A. testified,

It wasn't just like a small little thing between two fingers, it was his whole

entire hand, and he rubbed up against my breast with his hand.

T. at 31. On the second occasion, McCreary did the same thing. T. at 33.

{¶34} McCreary agreed with S.A. that he had pulled the zipper down on her fleece top two times.  McCreary did not present evidence or defend at trial that he accidentally or unintentionally brushed up against S.A.'s breast.  McCreary steadfastly denied that he had touched any part of S.A.'s body.  McCreary testified that he pulled the zipper down in an attempt to show S.A. that "I liked her back, I don't know."  T. at 159.  McCreary testified that he made multiple attempts to pull the zipper down because he believed S.A. was flirting with him by pulling the zipper back up.  T. at 159.  McCreary admitted that he had wanted to "hit" on S.A. for "a while."  T. at 163.  McCreary testified,

> I don't know what I was thinking, I don't have a great answer to put into
> words what I was thinking.

T. at 145.

{¶35}  The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant.  *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634(1995); *State v. Wallen*, 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722(5th Dist. 1969).  Thus, "[t]he test for whether a defendant acted knowingly [or recklessly] is a subjective one, but it is decided on objective criteria."  *State v. McDaniel,* 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412 (10th Dist. 1995).

{¶36}  This Court has previously found,

> [T]here is no requirement there be direct testimony regarding sexual
> arousal or gratification.  *State v. Astley* (1987), 36 Ohio App.3d 247, 523
> N.E.2d 322; *State v. Cobb* (1991), 81 Ohio App.3d 179, 610 N.E.2d 1009;

*In Re Ander*son (1996), 116 Ohio App.3d 441, 688 N.E.2d 545; *State v. Brady* (July 9, 2001), Stark App. No.2000CA00223, 2001 WL 815574. In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer Appellant was motivated by desires for sexual arousement or gratification from the "type, nature and circumstances of the contact, along with the personality of the defendant." *State v. Cobb* (1991), 81 Ohio App.3d at 185, 610 N.E.2d 1009; *State v. Brady, supra* (citing *Cobb*).

*In re J.T.,* 5th Dist. Licking No. 10-CA-134, 2011-Ohio-3324, ¶120. *Accord, State v. Bussle*, 11th Dist. Portage No. 2016-P-0026, 2017-Ohio-4045, ¶36.

**{¶37}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that McCreary engaged in sexual contact with S.A. who was not his spouse when he knew that the sexual contact was offensive to S.A., or was reckless in that regard. We hold, therefore, that the state met its burden of production and, accordingly, there was sufficient evidence to submit the case to the jury and to support McCreary's conviction.

**{¶38}** McCreary's First Assignment of Error is overruled.

II

**{¶39}** In his Second Assignment of Error, McCreary contends he was prejudiced by the prosecutor's appeal to the passion and prejudices of the jury. Specifically the prosecutor's repeated reference to the age difference between McCreary and S.A., referring to McCreary as a groomer, and referring to McCreary's actions as "fondling."

**Standard of Review**

{¶40} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984); *State v. Elmore*, 111 Ohio St.3d 515, 857 N.E.2d 547, 2006–Ohio–6207, ¶ 62. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

> If any misconduct occurred, the court must consider the effect it had on the jury "in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).
>
> * * *
>
> "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist. 2011), *citing State v. Williams*, 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910 (1988).

*State v. Mammone,* 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 109.

{¶41} Therefore, "[p]rosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera–Guillen*, 12th Dist. Butler No. CA2007–05–118, 2008–Ohio–5416, ¶ 27, *citing State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984).

**{¶42}** Whether statements made by a prosecutor amount to misconduct and whether such statements render a trial fundamentally unfair are mixed questions of law and fact, which we review de novo. *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009 (*citing United States v. Francis*, 170 F.3d 546, 549 (6th Cir.1999) (*citing United States v. Clark*, 982 F.2d 965, 968 (6th Cir.1993)).

**Issue for Appellate Review***: Whether McCreary was denied a fair trial because of improper comments by the prosecutor.*

**{¶43}** McCreary argues that the prosecutor committed misconduct by repeatedly highlighting the age of S.A. and the age difference between her and McCreary. The prosecutor further referred to S.A. as a "girl" or "young."

**{¶44}** We note that the age of the parties was a fact. The jury was able to observe both S.A. and McCreary because they both testified during the jury trial. Accordingly, the jury would be aware of the age difference between S.A. and McCreary. Further, the state had the burden of proving that it was an offensive touching. In any event, the trial court sustained McCreary's objection. T. at 165.

**{¶45}** Here the prosecutor's statements were a fair comment on the evidence. *See State v. Tibbetts,* 92 Ohio St.3d 146, 168, 749 N.E.2d 226 (2001) (argument that defendant was a "trained killer" deemed fair comment); *State v. Nields*, 93 Ohio St.3d 6, 37, 752 N.E.2d 859 (2001) (argument that the defendant was a "mean-spirited derelict" represented fair comment). There is little chance that the statements of the prosecutor denied McCreary a fair trial. Even without the comments, the jurors were aware of the age of the respective parties.

**{¶46}** McCreary further argues that the prosecutor committed misconduct by having Deputy Saylor testify about his own daughter being age 19.  [Appellant's brief at 6; 10].

**{¶47}** McCreary mischaracterizes the testimony.  McCreary cites to page 101 of the transcript,

> [Deputy Saylor]: I was trying to figure out what was going on, what was the disturbance about, and started speaking to [S.A.'s father], and once he started to explain the events that took place involving [S.A.], I kind of stopped him and I said, well, how old is your daughter, and he explained that she was 19.
>
> And right there I pretty much stopped him right there altogether.  I said, sir, if she is 19, I need to speak to her directly, she needs to make this complaint to us. She is an adult, and I need to correspond with her directly.

T. at 101.  Deputy Saylor was clearly testifying to S.A.'s age.  Accordingly, the testimony was not improper.

**{¶48}** Finally, McCreary argues that the prosecutor committed misconduct by referring to him as a "groomer" and to the touch as "fondling" during his closing argument. [Appellant's brief at 10].  The trial court overruled defense counsel's objection; however, the trial judge told the jury, "This is an argument, that is not evidence..."  T. at 197.

**{¶49}** During opening statement, counsel is accorded latitude and allowed fair comment on the facts to be presented at trial.  *See Maggio v. Cleveland*, 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912(1949), paragraph two of the syllabus.  *See, also, e.g., State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 126.  *State v.*

*Leonard*, 104 Ohio St.3d 54, 2004-Ohio 6235 at ¶157; 818 N.E.2d 229, 265-66.   In addition, a prosecutor is entitled to a certain degree of latitude in closing arguments.   *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561(1982).   Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments.   *State v. Maurer*, 15 Ohio St. 3d 239, 269, 473 N.E.2d 768(1984).   Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning."   *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

{¶50}   Comments made to incite fear; prejudice and/or passion in the jury require reversal.   *Viereck v. United States*, 318 U. S. 236, 247, 63 S.Ct. 561, 87 L.Ed. 739 (1943); *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906(1986).   We find the statements cited by McCreary in support of his argument do not rise to the level of inciting fear, prejudice, and/or passion.

{¶51}   "The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent…."   *Darden v. Wainwright*, 477 U.S. 168, 181-182, 106 S.Ct. 2624, 2472(1986).   In the case at bar, McCreary's second text message to S.A. after the incident admitted that he had wanted, "to do that for a long time."   "Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn from the evidence.   A prosecutor may state his or her opinion if it is based on the evidence presented at trial.   *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶ 154."   *State v. Diar,* 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 213.   In

addition, the trial court instructed the jurors to decide the verdict on the evidence alone and explained that the arguments of counsel were not evidence.

**{¶52}** Under these circumstances, there is nothing in the record to show that the jury would have found McCreary not guilty had the comments not been made on the part of the prosecution. When viewed in their entirety, the prosecutor's comments were not prejudicial and did not deny McCreary a fair trial. See *State v. LaMa*r, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 170.

**{¶53}** McCreary's Second Assignment of Error is overruled.

III.

**{¶54}** In his Third Assignment of Error, McCreary contends that his conviction for Sexual Imposition is against the manifest weight of the evidence. McCreary further argues that his conviction is duplicative of the trial court's guilty finding on the Disorderly Conduct charge.

**Standard of Review**

**{¶55}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶56}** The reviewing court must bear in mind; however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶57}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice, that the conviction must be reversed and a new trial ordered.*

**{¶58}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574

N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶59}**  In the case at bar, the jury heard S.A. and McCreary subjected to cross-examination, and saw the text messages.  The jury heard McCreary's arguments and explanations about the evidence and his actions.

**{¶60}**  We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.  Based upon the foregoing and the entire record in this matter we find McCreary's conviction on the count of sexual imposition is not against the sufficiency or the manifest weight of the evidence.  To the contrary, the jury appears to have fairly and impartially decided the matters before them.  The jury heard the witnesses, evaluated the evidence, and was convinced of McCreary's guilt.  The jury neither lost their way nor created a miscarriage of justice in convicting McCreary of the offense.

**{¶61}**  Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which McCreary was convicted.

**{¶62}**  McCreary next contends, in essence, that Disorderly Conduct and Sexual Imposition are allied offenses of similar import.

**{¶63}**  In this case, McCreary failed to object to his sentences in the trial court.[3] In *State v. Rogers*, the Ohio Supreme Court recently examined a case where the defendant

---

[3] McCreary has not provided this Court with a transcript of the sentencing hearing.  Without a complete record of the hearing in the trial court, we presume that the omitted portion of the record supports

was convicted of multiple offenses pursuant to a guilty plea. *State v. Rogers* 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860. The defendant appealed and argued for the first time on appeal that some of the convictions should have merged for sentencing. Id. at ¶ 11. The matter was certified as a conflict and presented to the Ohio Supreme Court. In making its decision, the Court clarified the difference between waiver and forfeiture as it pertains to allied offenses. Id. at ¶19–21. The Court rejected the argument that by entering a guilty plea to offenses that could be construed to be two or more allied offenses of similar import, the accused waives the protection against multiple punishments under R.C. 2941.25. Id. at ¶ 19. The Court held that an accused's failure to seek the merger of his or her convictions as allied offenses of similar import in the trial court, the accused forfeits his or her allied offenses claim for appellate review. Id. at ¶ 21. "[F]orfeiture is the failure to timely assert a right or object to an error, and * * * 'it is a well-established rule that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."'" Id. at ¶ 21.

{¶64} The accused may raise a forfeited claim on appeal through Crim.R. 52(B). Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Court held in *Rogers:*

> An accused's failure to raise the issue of allied offenses of similar
>
> import in the trial court forfeits all but plain error, and a forfeited error is not

the trial court's decision and that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes.

reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

143 Ohio St.3d 385, ¶ 3. The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

We have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers* at ¶ 23. *Accord, State v. Carr,* 5th Dist. Ashland No. 15-CA-00007, 2016-Ohio-9, ¶ 10- 12; *State v. Starr,* 5th Dist. Ashland No. 16-COA-019, 2016-Ohio-8179, ¶10-12.

{¶65} McCreary did not raise plain error. Because McCreary does not claim plain error on appeal, we need not consider it. *See, State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17–20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 25, *citing Wright v. Ohio Dept. of Jobs & Family Servs.*,

9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, ¶ 22 ("when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an argument on his behalf"). However, even if we were to consider McCreary's argument he would not prevail.

{¶66} In the case at bar, McCreary was charged in separate complaints. The first complaint alleged sexual imposition in violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree. In the second complaint, McCreary was charged with disorderly conduct in violation of R.C. 2917.11(A)(5), a minor misdemeanor. The jury found McCreary guilty of sexual imposition in violation of R.C. 2907.06(A)(1). As discussed in our disposition of McCreary's First Assignment of Error, the evidence presented at trial was sufficient to prove that McCreary engaged in sexual contact with S.A. who was not his spouse when he knew that the sexual contact was offensive to S.A., or was reckless in that regard.

{¶67} As charged in the case at bar, disorderly conduct is a minor misdemeanor. Accordingly, that charge was tried to the court, as McCreary did not have the right to a jury trial on a minor misdemeanor.

{¶68} S.A. testified that two times McCreary unzipped her top and while doing so touched her breast. S.A. further testified to a third attempt by McCreary to pull the zipper on her top down,

> Q. Okay. So, I just want to make sure that we are clear, he tried to do it a third time, and where did you put your hand?
>
> [S.A.]: To block the zipper like right above my chest, like right underneath my collarbone.
>
> Q.      And then what did he do?

[S.A.]: He tried to fight it.

Q.      With your hand there?

[S.A.]: Yes.

Q.:     What was he doing?

[S.A.]: Continually trying to unzip it, as my hand was here like as if I would move my hand.

T. at 34.  No sexual contact was alleged to have occurred during the third incident.  The trial court found McCreary guilty of disorderly conduct.  T. at 217.

{¶69}  In *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence,

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?  If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) *the offenses were committed separately*, and (3) the offenses were committed with separate animus or motivation.

* * *

An affirmative answer to any of the above will permit separate convictions.   The conduct, the animus, and the import must all be considered.

143 Ohio St.3d 114, ¶25 (emphasis added)

**{¶70}** Accordingly, because McCreary was found guilty on two separate complaints involving separate and distinct conduct, the sexual imposition would not merge with the disorderly conduct.

**{¶71}** McCreary's Third Assignment of Error is overruled.

IV.

**{¶72}** In his Fourth Assignment of Error, McCreary argues his trial counsel was ineffective because he did not request a jury instruction on the lesser offense of disorderly conduct.[4]

### Standard of Review

**{¶73}** "To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. In addition, to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (June 15, 2020).

---

[4] We have disregarded statements made in McCreary's brief that are not found in the record. In *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528, the Court noted: "[h]owever, a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, *State v. Ishmail*, 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500(1978).

**Issue for Appellate Review**: *Whether there is a reasonable probability that, but for counsel's failure to request a jury instruction on disorderly conduct, the result of the proceeding would have been different.*

> Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.

*State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

**{¶74}** Even presuming that the instruction should have been requested under these circumstances and that the conduct could have justified both an acquittal for sexual imposition and a conviction on disorderly conduct, it has been held that "'when a conviction for the charged offense was supported by sufficient evidence, the failure to give a lesser-included offense instruction is harmless, since the result of the proceedings would not have been different but for the lack of the instruction.'" *State v. Hall*, 11th Dist. Lake Nos. 2019-L-027 and 2019-L-031, 2019-Ohio-4000, ¶ 26, *citing State v. Jevnikar*, 11th Dist. Lake Nos. 2016-L-006 and 2016-L-007, 2016-Ohio-8113, ¶ 19; *State v. Whitman*, 11th Dist. Ashtabula No. 2013-A-0031, 2013-Ohio-5822, ¶ 47; *State v. Williams*, 11th Dist. Ashtabula No. 2020-A-0033, 2021-Ohio-1256, ¶ 35.

**{¶75}** As we have addressed in our disposition of McCreary's First Assignment of Error, McCreary's conviction for sexual imposition was supported by sufficient evidence, and, even presuming trial counsel was ineffective, we find no prejudice. McCreary

testified at trial denying that he had touched any part of S.A.'s body.  The jury rejected McCreary's denial that he had not touched any part of S.A. while pulling down the zipper on her top two times.  As such, there is no reason to conclude the outcome would have been different had a lesser-included instruction been given.

{¶76}  McCreary's Fourth Assignment of Error is denied.

{¶77}  The judgment of the Ashland County Municipal Court is affirmed.


By Gwin, J.,

Wise, Earle E., P.J., and

Baldwin, J., concur