[Cite as *State v. Combs*, 2020-Ohio-5397.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-01-004 |
| | : | O P I N I O N |
| - vs - | | 11/23/2020 |
| | : | |
| JEFFREY A. COMBS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019 CR 000734

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Denise S. Barone, 385 North Street, Batavia, Ohio 45103, for appellant

**HENDRICKSON, P.J.**

{¶1}   Appellant, Jeffrey A. Combs, appeals from his conviction and sentence in the Clermont County Court of Common Pleas for complicity to robbery.  For the reasons set forth below, we affirm his conviction and sentence.

{¶2}   In July 2019, Brooke Sadler was attempting to sell her home, which sat on a 43-acre lot on Belfast Road in Goshen, Clermont County, Ohio.  Though Sadler had moved

out of the residence in early 2019, she returned to the property multiple times per day in order to care for horses that remained on the property. Sadler also stored many of her belongings on the property, in either the basement of the residence, the pole barn, or the horse barn.

{¶3} On July 13, 2019, Sadler had an open house to allow potential purchasers a chance to view the property. Later that evening, around 8:30 p.m., Sadler returned to her Belfast property to tend to her horses. As she drove down her quarter-mile driveway, she noticed a dark, older model Ford pickup truck sitting in front of her pole barn. Sadler parked her vehicle directly behind the truck. As she got out of her vehicle, she saw a man who she did not recognize. Sadler asked the man, who was later identified as Aaron Lawson, what he was doing on the property. As she asked this question, Sadler noticed three individuals walk out of her opened pole barn. Sadler did not recognize these individuals, but they were later identified as appellant, Erin Pappas, and Joseph Snider. Appellant was not wearing a shirt when he exited the pole barn.

{¶4} Lawson told Sadler that he was given permission to be on the property by "Mike Miller." Sadler did not know any "Mike Miller," and she believed the individuals on her property were trying to steal from her. Sadler walked towards the pickup truck and asked Lawson what items belonging to her were in the bed of the truck. Lawson told Sadler he had a fishing rod, which he tossed on the ground. Sadler told Lawson and the others that she was going to call the police. When Sadler attempted to take a picture of the pickup truck's license plate, appellant hid the license plate by covering it with the brown shirt he had previously taken off.

{¶5} Sadler continued to try to get a picture of the license plate. While this was occurring, appellant and Snider started the truck so they could make an escape. Due to an issue with the truck's starter, appellant had to reach into the hood and manually touch the

truck's solenoids to get the truck to start. Appellant then joined Snider and Pappas in the truck's cab. Once the truck was started, it started moving backwards. Sadler, concerned that she might get pinned between the truck and her vehicle, jumped into the bed of the truck.

{¶6} Lawson jumped into the bed of the truck with Sadler. He took Sadler's phone and struck her in the head, causing her to fall out of the truck. Sadler lost consciousness and laid on the ground for a period of time. When she regained consciousness, Sadler's vehicle had been moved and her phone was gone. Sadler made her way to her neighbor's house. Sadler's neighbor observed that Sadler was injured, unsteady on her feet, and dazed. Sadler had a bruise on her cheekbone, scratches on her face, a black eye, black and blue marks under her chin, a concussion, and injury to one of her legs. The neighbor called the police.

{¶7} Officers from the Goshen Township Police Department immediately began an investigation. When the officers went to Sadler's Belfast property, the officers found both the front and side doors of the pole barn open. Inside the bole barn, items were stacked near the front door, as if they had been gathered together to be taken away. The officers also found a motorcycle sitting next to where the pickup truck had been parked on the property. According to Sadler, the motorcycle had been kept deep inside the pole barn.

{¶8} The officers also found a brown shirt near the area where the pickup truck had been parked. This was the same shirt that appellant used to hide the truck's license plate. Inside the pole barn, officers found a blue Igloo container that still had ice in it and a "Poplar Pop" cup with a straw. One of the officers, Officer McAllister, recognized the pearl shaped ice in the Igloo container and deducted that the ice likely came from a nearby United Dairy Farmers ("UDF"). A review of surveillance footage from the nearby UDF showed Lawson in the store with the blue Igloo container. The footage also showed appellant arrive at the

UDF shirtless, with a brown shirt draped across his shoulder. The footage captured appellant, Lawson, Pappas, and Snider getting into an older model pickup truck and driving away from the store.

{¶9} Officers began to search for appellant and his codefendants. Appellant was eventually found at one of his friend's homes. When appellant exited his friend's residence, he indicated to the arresting officer that he "knew this was coming." After being advised of his rights, appellant spoke with officers about what had occurred at Sadler's property. Appellant was initially evasive but ended up admitting that he learned during the robbery that he was not supposed to be at the Belfast home and that Lawson had no right to any of the items on the property. He further admitted that he covered the truck's license plate with his shirt to try to conceal his and his codefendants' identities.

{¶10} On July 30, 2019, appellant was indicted on one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree, one count of complicity to robbery in violation of R.C. 2923.03(A)(2) and 2911.02(A)(2), a felony of the second degree, and one count of complicity to disrupting public services in violation of R.C. 2923.03(A)(2) and 2909.04(A)(3), a felony of the fourth degree. Appellant pled not guilty to the charges and a jury trial commenced on December 2, 2019. After hearing testimony from Sadler, Sadler's neighbor, three Goshen Township police officers, and Snider, the jury found appellant guilty of complicity to robbery and not guilty of breaking and entering and complicity to disrupting public services. Appellant was sentenced on December 30, 2019 to an indefinite prison term of three to four and one-half years.

{¶11} Appellant appealed, raising two assignments of error. For ease of discussion, we begin by addressing appellant's second assignment of error.

{¶12} Assignment of Error No. 2:

{¶13} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-

- 4 -

APPELLANT AS HE WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED THE PROSECUTING ATTORNEY TO ENGAGE IN MISCONDUCT.

{¶14} In his second assignment of error, appellant argues he was denied a right to a fair trial due to the prosecutor's misconduct in interrupting and objecting during defense counsel's opening statement. He further argues he received ineffective assistance by his trial counsel as counsel failed to move for a mistrial following the prosecutor's interruption of defense counsel's opening statement.[1]

{¶15} The record reveals that defense counsel reserved his opening statement until the close of the state's case-in-chief. The prosecutor objected as follows during defense counsel's opening statement:

> [DEFENSE COUNSEL]: The State's going to suggest to you that you heard a full confession form Mr. Combs and that you have a full written confession. What you have is a recorded statement from Mr. Combs and a written statement from Mr. Combs. And in that statement, he gives a lot of information. *The officers commended him on how truthful and how honest and how helpful he was.*
>
> [PROSECUTOR]: I'm going to object.

(Emphasis added).

{¶16} After the prosecutor's objection, the court had the attorneys approach for a sidebar discussion.

> [PROSECUTOR]: Based on your written prior (indiscernible) attest to the truthfulness of any one witness, I think it's inappropriate in the opening that – again, reinforced by the idea

---

1. Within his assignment of error alleging prosecutorial misconduct, appellant also makes the argument that defense counsel was ineffective for not objecting to an officer's "rambling dissertation" of efforts undertaken to apprehend appellant. Appellant did not separately set forth an assignment of error alleging ineffective assistance of counsel, as required by App.R. 16(A). As such, we need not address appellant's arguments regarding counsel's alleged failure to object to a witness's testimony. *See* App.R. 12(A)(2). However, even if we were to consider such an argument, the argument fails as counsel's decision not to object falls within the ambit of trial strategy and alone will not establish an ineffective assistance of counsel claim. *State v. Arrone*, 12th Dist. Madison No. CA2008-04-010, 2009-Ohio-1456, ¶ 24.

that he's being truthful.

THE COURT: – (indiscernible) –

[PROSECUTOR]: Go ahead.

THE COURT: – (indiscernible) statements are on video. So I will overrule that objection because you – it sounds to me like this is going to be an argument. I mean, that's not going to happen.

[PROSECUTOR]: Okay.

THE COURT: Opening statement is preview.

[PROSECUTOR]: Okay.

THE COURT: He respected your case –

[PROSECUTOR]: Okay.

THE COURT: – so.

[PROSECUTOR]: Understood.

THE COURT: We're certainly going to get to closing argument –

[PROSECUTOR]: All right.

THE COURT: – but we won't get (indiscernible), so –

[PROSECUTOR]: I get you.

THE COURT: – any specific objection that is raised, I'm going to overrule with an admonition –

[PROSECUTOR]: Okay.

THE COURT: – with no bad feelings.

[PROSECUTOR]: Yeah.

THE COURT: (Indiscernible) saw in the video, move on to your next point. Let's avoid argument.

[PROSECUTOR]: Okay. Thank you.

After the trial court overruled the prosecutor's objection, defense counsel continued his

opening statement without any further interruption.

{¶17} Appellant contends the prosecutor's single objection during defense counsel's opening statement damaged his right to a fair trial. He argues that by interrupting defense counsel's opening remarks, the prosecutor "tainted the jury" by "sending a signal to the jury that [defense counsel] d[id] not deserve to be listened to. This is bad behavior and an example of a prosecutor using dirty tricks to achieve his point."

{¶18} "For a conviction to be reversed because of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights." *State v. Harner*, 12th Dist. Clinton No. CA2019-05-011, 2020-Ohio-1184, ¶ 29, citing *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "To demonstrate prejudice, a defendant must show that the improper acts were so prejudicial that the outcome of the trial would clearly have been different had those improper acts not occurred." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 42, citing *State v. Jones*, 12th Dist. Butler No. CA2006-11-298, 2008-Ohio-865, ¶ 21.

{¶19} "The focus of 'an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor.'" *Id.* at ¶ 43, quoting *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. Prosecutorial misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27. "The accused is to be given a fair trial, not a perfect trial." *State v. Kaaz*, 12th Dist. Clinton No. CA2016-05-010, 2017-Ohio-5669, ¶ 102, citing *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357 (1974). *See also State v. Landrum*, 53 Ohio St.3d 107, 112 (1990) (noting that a defendant is not guaranteed an "error free, perfect trial").

{¶20} In the present case, appellant cannot establish that the prosecutor's objection

was improper or that it prejudicially affected his substantial rights. "Although it is considered quite rude to repeatedly object during another party's opening or closing, there is no rule prohibiting counsel from interrupting a party's arguments with valid objections." *State v. Mulvey*, 7th Dist. Belmont No. 08 BE 31, 2009-Ohio-6756, ¶ 44. Here, although the trial court overruled the prosecutor's objection, there was a valid basis for the objection. The prosecutor objected as he believed defense counsel was attempting to use a police officer's statements to vouch for appellant's credibility. Not only are officers not permitted to render opinions on an accused's truthfulness; *see State v. Carpenter*, 12th Dist. Clermont No. CA2012-06-041, 2013-Ohio-1385, ¶ 18-20; but in this case, shortly before defense counsel gave his opening statement, the trial court admonished the jury as follows regarding an officer's ability to vouch for appellant's truthfulness:

> THE COURT: Ladies and gentlemen of the jury, both counsel asked questions of Capt. Hampton in terms of his belief in terms of whether or not Mr. Combs was being truthful. I probably should have then objected and not permitted anybody to inquire about that. The issue in terms of credibility is for you to decide, and a witness is not allowed to testify as to their opinion as to whether or not they believe a person was being truthful or untruthful.
>
> You can certainly consider everything that was testified to, the defendant's statement in relation to the evidence that has been offered. But you are instructed to disregard the testimony that was given, both in response to [defense counsel's] questioning, as well as [the prosecutor's] questioning, in terms of whether or not Capt. Hampton believed that Mr. Combs was being truthful. Okay? That's a decision ultimately that you're going to make.

Accordingly, the prosecutor's objection was not improper and had a valid basis.

{¶21} Additionally, the prosecutor's single objection did not result in any prejudice to appellant. The objection, which consisted of the prosecutor saying, "I'm going to object" and then a sidebar discussion, did not prejudice the jury or have an impact on the outcome of the trial. The jury continued to give their attention to defense counsel, and at the close

of trial, rendered an acquittal on two of the three charges appellant faced. Appellant cannot demonstrate any prejudice and his claim of prosecutorial misconduct, therefore, fails.

{¶22} Appellant also argues he received ineffective representation from defense counsel as counsel failed to move for a mistrial following the interruption of defense counsel's opening statement. "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989) and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.*, citing *Bradley* at paragraphs two and three of the syllabus.

{¶23} In the present case, appellant cannot demonstrate that counsel was deficient for not moving for a mistrial or that he was prejudiced by this decision. "[W]hether or not to move for a mistrial is a tactical decision and is well within the range of competent assistance of counsel." *State v. Gilbert*, 12th Dist. Butler No. CA2010-09-240, 2011-Ohio-4340, ¶ 83. Appellant was not prejudiced by counsel's decision not to move for a mistrial, as such a motion would have been futile. Mistrials are only declared "when the ends of justice so require and a fair trial is no longer possible." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). As discussed above, the prosecutor's sole objection during defense counsel's opening statement did not prevent appellant from receiving a fair trial and it did not affect the outcome of trial. Appellant's ineffective assistance of counsel claim is, therefore, without merit.

{¶24} Accordingly, having found no merit to appellant's claims of prosecutorial

misconduct or ineffective assistance of counsel, we overrule his second assignment of error.

{¶25} Assignment of Error No. 1:

{¶26} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN SENTENCING HIM TO SERVE A THREE-YEAR TERM.

{¶27} In his first assignment of error, appellant argues the trial court erred in imposing an indefinite prison sentence of three to four and one-half years, as such sentence was excessive.

{¶28} An appellate court reviews an imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *State v. Crawford,* 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to that statute, an appellate court does not review the sentencing court's decision for an abuse of discretion. *Marcum* at ¶ 10. Rather, R.C. 2953.08(G)(2) compels an appellate court to modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers,* 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8; *State v. Julious,* 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8.

{¶29} Appellant does not dispute that the trial court properly imposed postrelease control or that the court sentenced him within the permissible range for a second-degree felony after determining that the presumption in favor of a prison term had not been

overcome. R.C. 2929.14(A)(2)(a) permitted the imposition of an indefinite prison term with a stated minimum term of two, three, four, five, six, seven, or eight years and a maximum term consisting of an additional fifty percent of the imposed minimum term. *See* R.C. 2929.144(B)(1). Appellant's indefinite prison term of three to four and one-half years falls within the permitted statutory range. Nonetheless, appellant maintains that the sentence is "excessive" given his "minimal involvement" in the robbery offense and his lack of a long felony record.

{¶30} The purposes of felony sentencing are to protect the public from future crime by the offender, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. R.C. 2929.11(A). A felony sentence must be reasonably calculated to achieve the purposes set forth in R.C. 2929.11(A) "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). In sentencing a defendant, a trial court is not required to consider each sentencing factor, but rather to exercise its discretion in determining whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. *State v. Littleton*, 12th Dist. Butler No. CA2016-03-060, 2016-Ohio-7544, ¶ 12. The factors set forth in R.C. 2929.12 are nonexclusive, and R.C. 2929.12 explicitly allows a trial court to consider any relevant factors in imposing a sentence. *State v. Birt,* 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 64.

{¶31} Following our review of the record, we find no error in the trial court's sentencing decision. The trial court properly considered all relevant sentencing factors, including the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12. Not only does the court's sentencing entry reflect these considerations, but the

court specifically referenced R.C. 2929.11 and 2929.12 in finding that appellant's complicity to robbery offense was neither more serious nor less serious than conduct normally constituting the offense. In making this determination, the trial court found that while appellant had not personally struck Sadler, his complicity in the robbery offense contributed to the injuries she sustained. The court noted that in addition to appellant's involvement in gathering items to be taken from the pole barn, appellant had sought to conceal his and his codefendants' identities by hiding the license plate of the pickup truck they were loading stolen items.

{¶32} The court also considered appellant's risk of recidivism, finding that recidivism was "more likely rather than less likely * * * based primarily upon Mr. Combs extensive past criminal history as set forth in the presentence investigation [report]." As the trial court noted, appellant had a lengthy criminal history that dated back to 1988. When appellant was a juvenile, he was adjudicated delinquent for theft and violation of a court order. Since reaching adulthood, appellant had been convicted of attempted burglary, a third-degree felony, and more than 15 misdemeanors, comprised mainly of driving under suspension, having open containers, resisting arrest, OVI, persistent disorderly conduct, and theft offenses. For many of these convictions, appellant was placed on community control, which he repeatedly violated. Although he successfully completed his community control for his 1992 felony conviction with only one community control violation recorded, appellant's numerous violations for his misdemeanor offenses led to the revocation of community control in at least two cases. As of the time of sentencing, appellant had a bench warrant for his arrest for a violation of his community control sanction relating to a 2015 theft offense.

{¶33} In finding that appellant posed a higher risk of recidivism, the trial court also noted that appellant's criminal actions had continued in the days after the robbery at Sadler's Belfast home. In August 2019, appellant was convicted of the unauthorized use of

property for an offense that had been committed on July 14, 2019 – the day after the robbery at Sadler's home. The trial court noted appellant's ongoing criminal behavior was inconsistent with appellant's claim of remorse, stating, "If you are caught off-guard [when] this terrible incident occurs with Ms. Sadler and you are remorseful for that [then] it strikes me as incredibly inconsistent * * * [that] the next day you would be involved with another theft offense involving somebody else's property."

{¶34} Given the harm cased to Sadler, the risk of recidivism appellant posed, and his lack of remorse, appellant's sentence was not excessive. As the imposition of an indefinite prison term of three to four and one-half years was not contrary to law and was supported by the record, we find no merit to appellant's arguments and overrule his first assignment of error.

{¶35} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.