[Cite as *State v. Smith*, 2024-Ohio-497.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-05-041 |
| | : | O P I N I O N |
| - vs - | | 2/12/2024 |
| | : | |
| STEVEN A. SMITH, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT
Case No. 2022CRB000529

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Rittgers & Rittgers, and Neal D. Schuett, for appellant.

**PIPER, J.**

{¶ 1} Appellant, Steven A. Smith, timely appeals his conviction for sexual imposition, a third-degree misdemeanor, after a jury trial.

**Factual Background and Procedural Posture**

{¶ 2} On May 22, 2022, Sam Parlett, his family, and friends were celebrating his high school graduation at The Barrell in Springboro, Ohio. In attendance at the graduation

party was Kaitlyn Yates, Parlett's girlfriend. They had been dating for approximately six or seven months. Also in attendance was Steven Smith, Parlett's step-grandfather. Yates was acquainted with Smith from having attended prior gatherings of Parlett's family but had limited contact with Smith.

{¶ 3} Smith and his wife Kimberly, Parlett's grandmother, were making their goodbyes to others and preparing to leave the party. Kimberly approached Yates for a goodbye hug. As this was happening, Smith also initiated contact with Yates by pushing her on the shoulder and then doing so again while Kimberly was hugging Yates. When Kimberly had concluded hugging Yates and moved away, Smith continued touching Yates. Yates testified:

> * * * [Kimberly] went away to go hug somebody else, and he pushed me, I believe, one more time on my shoulder, and then he pushed me on my chest, and then the next was [sic] he grabbed my boobs. And all the while, I was backing away.
>
> And then he proceeded to turn around and, like, nudge me with his back side into the corner ***

Yates did not believe this incident was an accident because Smith repeatedly advanced and touched her as she tried backing away. Yates also demonstrated to the jury with her hand how Smith touched her breast. The physical contact ended when she put her hand up to remove his hand from her breast.

{¶ 4} Yates testified that while she was offended and "couldn't believe what had just happened," she did not yell or cause a scene because she wanted to make a good impression with Parlett's friends and family and did not want to ruin the party. However, Yates did discuss what happened with Sam's mother and as well as the girlfriend of Parlett's brother.

{¶ 5} Christine Parlett, Sam's mother, reported the incident to the Springboro police department, and the matter was investigated by Detective Drew Pyles. According

to Detective Pyle's report, Yates stated that Smith "did not squeeze" her breast, but that he "grabbed" it or placed his hand "firmly across her breast." At trial, Yates maintained "it wasn't so much of a squeeze; it was a grip. Not just a push * * *."

{¶ 6} In addition to speaking with Yates, Detective Pyles obtained a copy of the security footage from The Barrel and arranged for Smith to be interviewed at the Springboro police department. Smith initially told Detective Pyles that he did not remember touching Yates, but after Detective Pyles had Smith review the security camera footage, Smith exclaimed "Jesus, Christ, I owe her an apology." Detective Pyles testified that Smith also acknowledged that, depending on the circumstances, such conduct by others could be viewed as inappropriate.

{¶ 7} Kimberly Smith testified at trial that her husband is a "goofball" and jokes around with people often. She stated that when she initially went in to hug Yates, Smith shoved Yates and said to her "No hugs for you." Kimberly stated they all laughed and believed they "were having fun" during this initial exchange.

{¶ 8} Smith was charged with a single count of sexual imposition. Smith pled not guilty, and the matter proceeded to a jury trial. The jury returned a guilty verdict, and Smith was sentenced to 60 days in jail (with 45 days suspended), one year of community control, and a $300.00 fine. Smith was also ordered to stay away from and have no contact with Yates.

{¶ 9} Specific aspects of the trial that are raised within Smith's assignments of error will be discussed in further detail below.

{¶ 10} Smith's first and second assignments of error will be discussed together.

{¶ 11} **Assignment of Error No. 1:**

**THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF SEXUAL IMPOSITION.**

**A. FIRST ISSUE PRESENTED FOR REVIEW AND ARGUMENT: The trial court erred when it denied trial counsel's Crim.R. 29 Motion.**

**B. SECOND ISSUE PRESENTED FOR REVIEW AND ARGUMENT: The jury's guilty verdict on Count One, sexual imposition, was not supported by sufficient evidence.**

**{¶ 12}** Assignment of Error No. 2:

**APPELLANT'S CONVICTION WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶ 13}** Smith argues that there was insufficient evidence he touched Yates's breast for purposes of sexual arousal or gratification and that his conviction was against the manifest weight of the evidence. Specifically, Smith makes several arguments: (1) the mere touching of Yates's breast proves nothing about his purpose for doing so; (2) Smith, consistent with his character, was joking around in a jovial atmosphere at the time the touching occurred; (3) Smith only touched Yates's breast in the last of the six times he touched her; and (4) Yates described the touch as a "firm press" or push as opposed to a grab, fondle, or grope.

## A. Standard of Review

**{¶ 14}** Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Maloney*, 12th Dist. Butler No. CA2022-07-069, 2023-Ohio-2711, ¶ 40, citing *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

**{¶ 15}** When reviewing the sufficiency of the evidence presented at trial "[t]he

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Essentially, "the test for sufficiency focuses on whether the state met its burden of production at trial * * *." *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 10.

{¶ 16} However, a manifest weight of the evidence determination must examine "the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, (1997), quoting *Black's Law Dictionary* (6th Ed.1990). The *Thompson* court further observed, "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 2218 (1982); *See also State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.

{¶ 17} Stated differently, during this examination, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice" that a new trial must be ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168.

{¶ 18} As a result of the foregoing, if a conviction is supported by the manifest weight of the evidence, it will also be supported by sufficient evidence and satisfy Criminal Rule 29. *Maloney*, 2023-Ohio-2711 at ¶ 40, 43.

### B. Analysis

{¶ 19} Smith's conviction for sexual imposition was not against the manifest weight

of the evidence. Under R.C. 2907.06(A)(1), "No person shall have sexual contact with another * * * [when] [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard." "Sexual Contact" is defined as the "touching of an erogenous zone of another * * * [including a female's breast] for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 20} Smith's appeal focuses on whether his conduct constitutes purposeful, sexual contact. We have previously observed that, "[w]hether the touching or contact was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *State v. Long*, 12th Dist. Warren No. CA2019-08-078, 2020-Ohio-2678, ¶ 22, citing *In re A.L.*, 12th Dist. Butler No. CA2005-12-520, 2006-Ohio-4329, ¶ 19-20. "If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Id.* at ¶ 23, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185 (9th Dist.1991).

{¶ 21} Ultimately, "[T]he essential question is, '* * * would an ordinary, prudent person or a reasonable person sitting as a juror perceive from the defendant's actions, and all of the surrounding facts and circumstances, that the defendant's purpose or specific intention was arousal or gratification of sexual desire." *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-062, ¶ 19, quoting *State v. Mundy*, 99 Ohio App.3d 275, 289 (2nd Dist.1994).

{¶ 22} Here, consideration of several pieces of evidence and testimony convince us that Smith's conviction is not against the manifest weight of the evidence. First, the record included video evidence that Smith repeatedly advanced toward and touched Yates on or about her breast before Yates used her own hand to remove Smith's. Smith

then proceeded to push toward Yates with his back side until she was up against a wall. Second, while various verbs were used to attempt to discern how exactly Smith placed his hand upon Yates' breast, including "grabbed," "squeezed," or "firmly pressed," Yates always maintained the touching was, in her opinion, not accidental because Smith repeatedly advanced toward her and touched her before ultimately touching her breast in a manner that made her forcibly remove it. Third, the testimony presented at trial also demonstrated Smith and Yates's relationship had not progressed beyond being acquaintances. Finally, Smith indicated he could not remember touching Yates. However, after seeing the security, he exclaimed he owed Yates an apology and acknowledged that such conduct could, under certain circumstances, be considered inappropriate.

{¶ 23} Upon consideration of the evidence presented at trial, the jury cannot be said to have lost its way simply because it found Smith's conduct culpable and did not agree with his argument that he was joking around and accidentally touched Yates' breast. Therefore, the jury's determination that the touching of Yates' breast by Smith was for the purpose of sexual arousal or gratification was not a miscarriage of justice. We therefore conclude that Smith's conviction for sexual imposition was supported by sufficient evidence and not against the manifest weight of the evidence.

{¶ 24} **Assignment of Error No. 3:**

> **THE PROSECUTOR'S MISCONDUCT DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL.**

{¶ 25} Smith contends that the prosecutor's remarks during closing argument misstated the facts and law to such an extent as to constitute prosecutorial misconduct and deprived Smith a fair trial.

**A. Background and Smith's Arguments**

{¶ 26} During closing arguments and rebuttal, the prosecutor made several statements Smith takes issue with. First, the prosecutor stated that Smith "groped [Yates'] breast. He grabbed her." Smith argues this is impermissibly contradicted by Yates' testimony that characterized Smith's conduct as a "firm press" as opposed to a "squeeze." Next, the prosecutor stated, "We proved * * * that [Smith] engaged in sexual contact by touching [Yates'] breast." Smith argues that this and similar statements made by the prosecutor during closing remarks misstates the law because the law does not assume a purpose of sexual arousal or gratification from the mere touching of an erogenous zone.

{¶ 27} Third, the prosecutor also asserted:

> I do not have to prove that [the touching] lasted an extended duration, that he touched her breast multiple times, that he engaged in any kind of flirtation, or that he made comments to her. I do not have to prove any of those things.
>
> So when you're back deliberating and someone says, ["]Well, he didn't do this,["] remind yourselves that's not required. These elements are required for us to prove sexual imposition, but please do not add to that burden. Please do not raise the bar.

Smith argues that while the state does not have to prove such details, the prosecutor's comments effectively prohibited the jury from considering other relevant circumstances.

{¶ 28} Finally, the prosecutor said to the jury, "Think of every reason you can think of for a 50-some-year-old man to touch an 18-year-old girl's breast." This statement was immediately objected to by Smith's counsel. After a sidebar, the prosecutor continued by eliminating contexts in which Smith's touching of Yates' breast would be innocent or otherwise permissible before arguing the touching could not be interpreted as two people joking or an accident because if it had been, Smith would not have initially denied touching Yates during his interview with Detective Pyles. Smith argues the initial comment encouraged the jury to "assume criminal behavior" because Smith is an older man and

Yates is a younger woman.

## B. Applicable Law

{¶ 29} Where there was no objection to the prosecutor's purported misconduct, courts review only for plain error. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 52. "To prevail, appellant must show that an error occurred, that the error was plain, and that the error affected his substantial rights * * *" by affecting the outcome of trial. *Id.*

{¶ 30} Similarly, "[t]he test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984); *State v. Miller*, 12th Dist. Preble No. CA2019-11-010, 2021-Ohio-162, ¶ 44. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Combs*, 12th Dist. Clermont No. CA2020-01-004, 2020-Ohio-5397, ¶ 19; *Miller*, 2021-Ohio-162, at ¶ 45. Importantly, attorneys are "granted latitude in closing arguments," and where "it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found appellant guilty * * *" a conviction will not be disturbed. *State v. Loza*, 71 Ohio St.3d 61, 78 (1994).

## C. Analysis

{¶ 31} As to the first three statements Smith takes issue with, which were not objected to, we find no error, plain or otherwise. As discussed above, Yates did characterize Smith's touching of her breast as a grab or grip. Additionally, she indicated to the jury with her own hand how Smith touched her breast. Based upon Yates' testimony and demonstrative gesture, the prosecutor's characterization of Smith's conduct as a "grab" or "grope" were not unfair comments. Furthermore, the jury was clearly instructed that arguments made in closing by the attorneys are not to be considered as evidence.

{¶ 32} Next, although the prosecutor argued that the state had proved "sexual contact" by touching Yates's breast and that the state did not have to prove other circumstances such as duration or prior interaction between the parties, review of the prosecution's entire closing argument and rebuttal demonstrates the state consistently asked the jury to also consider the surrounding circumstances of the case, including the fact that Yates stepped back from the initial touching, that Smith moved forward and continued touching Yates until she removed Smith's hand from her breast, and that Smith initially denied touching Yates at all. For the same reasons, we do not find that the prosecutor asked the jury to consider only Smith's and Yates' age and to assume criminal behavior.

{¶ 33} Therefore, upon consideration of the entire trial record, none of the remarks made by the prosecutor amounted to prosecutorial misconduct or denied Smith a fair trial.

{¶ 34} **Assignment of Error No. 4:**

**THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO A COUNSEL THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL.**

{¶ 35} Smith argues that his counsel's failure to object to the prosecutor's improper remarks during closing argument was ineffective assistance of counsel. To demonstrate ineffective assistance of counsel, Smith must show that his "counsel's performance fell below an objective standard of reasonableness and resulting prejudice, i.e., a reasonable probability the result of the proceeding would have been different." *State v. Childers*, 12th Dist. Butler No. CA2023-01-006, 2023-Ohio-2436, ¶ 4, citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068 (1984); *State v. Vore*, 12th Dist. Warren No. CA2012-06-049, 2013-Ohio-1490, ¶ 14. As our analysis of Smith's third assignment of error makes clear, the prosecutor's remarks during closing argument were not improper, meaning Smith's counsel did not prejudice Smith by failing to object to them.

{¶ 36} **Assignment of Error No. 5:**

**THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL THROUGH CUMULATIVE ERROR.**

{¶ 37} Smith argues on appeal that the assignments of error above resulted in cumulative error meriting reversal, even if none of them did individually. Under the cumulative error doctrine, an appellate court will reverse a conviction if the collective effect of trial errors prevented a defendant from having a fair trial, even if each error individually did not. *State v. Akladyous*, 12th Dist. Butler No. CA2021-12-164, 2023-Ohio-3105, ¶ 60, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 140. As stated above, we have found no error in this case and therefore need not consider the cumulative error doctrine.

{¶ 38} In conclusion, we overrule Smith's assignments of error.

{¶ 39} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.