[Cite as *State v. Pokhrel*, 2024-Ohio-3073.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2023 CA 0090 |
| PUSPA POKHREL | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Municipal Court, Case No. 2023 CR 0379


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      August 12, 2024


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

TRICIA M. MOORE          DENNIS BELLI
LAW DIRECTOR          536 South High Street
AMY S. DAVISON          Floor 2
ASSISTANT LAW DIRECTOR          Columbus, Ohio  43215-5785
40 West Main Street
Newark, Ohio  43055-5531

*Wise, J*

{¶1}    Defendant-Appellant, Puspa L. Pokhrel, appeals the judgment of the Licking County Municipal Court convicting him of sexual imposition. Appellee is the State of Ohio.

## FACTS AND PROCEDURAL BACKGROUND

{¶2}    On March 24, 2023, around 8:00 pm, Granville City Police Officers Kaffenbarger and Pope were dispatched to the Curtis Dining Hall at Dennison University in response to a 911 call from I.H.  They found I.H. in the office physically upset and crying.

{¶3}    I.H. told the officers that she reported to work as a dishwasher on the five to eight pm shift that day and the manager assigned the appellant to train her.

{¶4}    The job entailed loading dirty dishes onto carts, taking them down to the basement in an elevator, loading them into a dishwasher, and taking the clean dishes back to the dining hall in the elevator.  She told the officers that Pokhrel touched her breasts and backside inappropriately.

{¶5}    I.H. testified at trial and offered the details of her claim.

{¶6}    She described four incidents during her work assignment with Pokhrel that she considered inappropriate and sexual in nature.

{¶7}    The first occurred in the basement when they were loading dishes into the dishwasher and Pokhrel moved his arm across from her and bumped her chest.  She thought it was just an accident.

{¶8}    The second incident occurred when the pair were inside the large elevator with a cart of dishes and Pokhrel told I.H. she had food – an onion straw – affixed to her

apron around her breast area. Pokhrel acted like he was wiping it away but guided his hand down her chest. I.H. didn't do or say anything at that time because it felt weird and she just "froze".

{¶9}    The third incident happened when Pokhrel asked her why she did not have a name tag on her apron and traced the outline of a name tag on her breast.

{¶10}   The fourth incident happened later in the elevator and Pokhrel said "you have a lot of meat on you." He grabbed her arm and "squished" it. She replied "yes, I am just thick that is why I look like that." Pokhrel then pointed and touched her buttocks area and chest. He tried to touch her vaginal area but she moved out of the way.

{¶11}   After that incident, I.H. told Pokhrel she was taking her lunch and went to the manager's office to retrieve her cell phone. The manager had taken it prior to the beginning of her shift.

{¶12}   I.H. ate her meal and then texted her friend, Eddie. Then, she texted her boyfriend.

{¶13}   After that, she dialed 911 and talked to the manager and Pokhrel's wife, who was also employed at Dennison making pizza.

{¶14}   I.H. called the police because she "didn't like the situation that happened and ... wanted him [Pokhrel] to get in trouble for what he did." Tr. at 102.

{¶15}   Law enforcement from the Granville Police Department arrived, and I.H. wrote out a statement of what occurred to her that day (State's Exh. 1). In addition to the three incidents, I.H. also described the incident involving a name tag. Pokhrel asked her why she wasn't wearing a name tag on her black Dennison-supplied apron and used his finger around the top of her breast area to trace the name tag with his finger.

{¶16}  When the police arrived, they found Pokhrel in the dining hall where the dishwasher equipment was located. Pokhrel was of Nepalese descent and his English was very broken.  When Officer Kaffenburger talked with him, Pokhrel said that he had made incidental contact with I.H. while trying to show her how to do her job.

{¶17}  Pokhrel was arrested, handcuffed, and taken to the Granville Police Station where he was put in a holding cell.

{¶18}  Detective Newlun from the Granville Police Department was called at his home and returned to the police station to interview Pokhrel.  The Detective used "Google translate" to assist him with the Nepalese dialogue and read him his *Miranda* rights.  Pokhrel signed a waiver stating that he was willing to answer questions without a lawyer present.  (State's Exh. 2).

{¶19}  Pokhrel told Detective Newlun that he accidentally touched I.H. with his elbow while reaching for dishes, and that while trying to push a button on the elevator he pushed against her buttocks with the back of his hand.  Pokhrel's son and daughter-in-law came to the police station to assist him.  After the Detective read I.H.'s statement to Pokhrel, he then told the Detective that he tried to wipe food off her apron to clean it and touched her breast.

{¶20}  Pokhrel was then charged with sexual imposition a violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree.

{¶21}  Pokhrel pleaded not guilty and requested a jury trial.  A jury trial was held on December 7, 2023.  A Nepalese interpreter was called to assist with the trial.

{¶22}  The state called three witnesses including I.H. and introduced two exhibits into the record. Pokhrel objected to the admission of I.H.'s written statement.  At the

close of the state's case, Pokhrel made a Criminal R. 29 motion that was denied by the trial court.

{¶23} Pokhrel testified in his own defense. For his part, Pokhrel explained his background as a Nepalese immigrant who moved to Chicago when he was in his forties.

{¶24} He was a United States citizen and has been in the United States for over 16 years. Prior to moving to the United States, he worked as a sheepherder and had no formal education. He worked as a dishwasher for five years with a contractor used by Dennison to provide food services.

{¶25} Pokhrel denied making any statements about meat on I.H.'s body and may have touched I.H. three times – once in the elevator, once when loading the dishwasher and once when removing the food. Tr. 191.

{¶26} At the close of the evidence, Pokhrel renewed his Criminal Rule 29 Motion and it was denied by the trial court.

{¶27} After hearing the evidence and receiving instructions from the trial court, the jury found Pokhrel guilty of the crime of sexual imposition.

{¶28} Pokhrel was sentenced to sixty days in the Licking County Jail with forty days suspended. He was placed on a term of one-year probation and required to enter and successfully complete a mental health treatment program.

{¶29} As noted by the trial court as an onerous but mandatory requirement, Pokhrel was classified a Tier One sexual offender and required to register with the Sheriff in the county in which he resides for a period of fifteen years.

{¶30} Appellant timely appealed his conviction and sentence claiming five assignments of error:

## ASSIGNMENTS OF ERROR

{¶31} "I.    DEFENDANT-APPELLANT'S    CONVICTION    FOR    SEXUAL IMPOSITION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE THAT HE TOUCHED AN EROGENOUS ZONE OF THE PROSECUTING WITNESS FOR THE PURPOSE OF SEXUAL AROUSAL OR GRATIFICATION.  (Tr. 163-164, 193).

{¶32} "II.    THE  JURY'S  VERDICT  FINDING  DEFENDANT-APPELLANT GUILTY OF SEXUAL IMPOSITION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (Tr. 217).

{¶33} "III.    THE  ADMISSION  OF  THE  PROSECUTING  WITNESS'S  PRIOR WRITTEN STATEMENT AS A STATE'S EXHIBIT VIOLATED EVID.R. 802 AND 803(5) AND DEPRIVED DEFENDANT-APPELLANT OF HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.  (Tr. 162).

{¶34} "IV.    DEFENDANT-APPELLANT  WAS  DENIED  HIS  RIGHT  TO  THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DUE TO TRIAL COUNSEL'S FAILURE TO OBJECT TO THE PROSECUTOR'S IMPROPER CLOSING REMARKS AND FAILURE TO REQUEST A LIMITING INSTRUCTION AND A MENS REA INSTRUCTION. (Tr. 195, 207-208).

{¶35} "V.    THE  TRIAL  COURT  ABUSED  ITS  DISCRETION  WHEN  IT SENTENCED DEFENDANT-APPELLANT, A 57-YEAR OLD FIRST TIME OFFENDER, TO A JAIL TERM. (Tr. 223)."

## LAW AND ANALYSIS

## I, II Sufficiency of Evidence, Manifest Weight

{¶36}  In appellant's first two assignments of error, he argues that his conviction for sexual imposition was based on insufficient evidence and was against the manifest weight of the evidence.  Appellant argues that while he may have been guilty of disorderly conduct, there was no evidence presented that his actions demonstrated a sexual motive.

{¶37}  The standards for challenges to the sufficiency of the evidence and for challenges to the manifest weight of the evidence are quantitatively and qualitatively different.  *State v. Thompkins,* 78 Ohio St. 3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  Thus, while a court of appeals may determine that a conviction is supported by sufficient evidence, that court may nevertheless conclude that the jury's verdict is against the weight of the evidence.

{¶38}  Sufficiency challenges are a test of adequacy.  As the supreme court has held:

> The sufficiency of the evidence is a test of adequacy.  *Thompkins* at
> 386, 678 N.E.2d 541.  When evaluating the adequacy of the evidence, we
> do not consider its credibility or effect in inducing belief.  (citations omitted).
> Rather, we decide whether, if believed, the evidence can sustain the verdict
> as a matter of law.  This naturally entails a review of the elements of the
> charged offense and a review of the state's evidence.

{¶39}  The Ohio Supreme Court borrowed in *Jenks* this sufficiency standard from the federal standard. Thus, pursuant to this standard, the reviewing court's task is "to

examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."

{¶40} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

{¶41} Evidentiary claims that challenge the manifest weight of the evidence are reviewed under a different standard than sufficiency claims. Under the manifest weight standard of review, the reviewing court assesses all of the evidence admitted at trial to determine whether it agrees with the factfinder's resolution of conflicting evidence, sitting as a kind of "thirteenth juror," *Thompkins, supra*, at 386. The reviewing court must decide whether the jury lost its way in assessing and weighing the credibility of witnesses and admitted evidence and thereby created a manifest miscarriage of justice.

{¶42} Appellant was convicted of sexual imposition in violation of R.C. 2907.06(A)(1) which states in part: "No person shall have sexual contact with another, … [when] [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

{¶43} "Sexual Contact" is defined as the "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).

{¶44} Because the Ohio Revised Code does not define "sexual arousal" or "sexual gratification", courts have grappled with the subject.

{¶45} There is no requirement that there be direct testimony regarding sexual arousal or gratification. It is a question of fact to be inferred from the type, nature and circumstances of the contact. *State v. Meredith,* 2005-Ohio-2664, ¶ 13 (12th Dist.). "In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making the physical contact with the victim." Citations omitted.

{¶46} In determining whether sexual contact occurred, "the proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01." *State v. Cobb,* 81 Ohio App.3d 179, 185, (9th Dist., 1991). *State v. Lee,* 2024-Ohio-2044, ¶ 37 (5th Dist.).

{¶47} Here, several actions of appellant and I.H.'s testimony convince us the appellant's actions were for purposes of sexual arousal or gratification.

{¶48} Appellant admitted to touching I.H. on at least three occasions on her breast and buttocks area. While various verbs were used to describe appellant's touching of I.H.'s breast from groping to pushing, there was sufficient evidence to establish that appellant made contact with the breast of I.H. While I.H. brushed off the first incident as accidental, the contact continued on at least three occasions when appellant traced a name tag on her breast area and brushed food particles from her breast area. I.H. also testified that appellant touched her buttocks area and attempted to touch her vaginal area while remarking on how much "meat" she had on her body.

{¶49} Appellant claims that while his conduct may have been "boorish" or "crude", there was no evidence of his sexual arousal or gratification by the contact with I.H. He cites *In re Redmond,* 2007-Ohio-3125, (3d Dist.) for the proposition that his intent may

have been to shock, embarrass or upset I.H., but not to obtain sexual gratification. But *Redmond* can be easily distinguished. The *Redmond* case involved a seventeen-year-old juvenile who lifted the skirt of a female juvenile and touched her vagina and upper thigh or buttocks. This crude, juvenile behavior was performed in the hallway of the high school in between classes and in front of friends. The juvenile testified he was just playing around. There was some conflict on whether he used his book or his hand.

{¶50} In contrast, appellant was a 57-year-old man whose conduct with 19-year-old I.H. was done with no others around in enclosed spaces such as the elevator and basement of the cafeteria. c.f. *State v. Smith,* 2024-Ohio-497, (12th Dist.) (step grandfather found guilty of sexual imposition for touching breast of high school female at graduation party).

{¶51} Appellant also claims that his Nepalese heritage may have contributed to cultural differences that could explain his behavior. However, appellant is a United States citizen and has been in this Country for over sixteen years. He has been gainfully employed for over five years on a college campus and is subject to the criminal codes of Ohio.

### III. Prior statement

{¶52} In his third assignment of error, appellant claims that the trial court erred when it admitted I.H.'s hand written statement as State's Exhibit 1. He further argues that the state used the statement during closing argument as substantive evidence that appellant "grabbed her boobs" when she made no such statement at trial.

{¶53} The hand-written statement of I.H. was first discussed during the cross examination of I.H.:

Q: Okay, and then did you write then we got out and took the dishes back washing them and then he was touching my apron and saying what is that on your shirt and then I said it is food and then he was acting like he was wiping it off and then grabbed my boobs. Is that what you wrote.

A: Yes, that is what I wrote.

{¶54} Tr. 118.

{¶55} At the close of the evidence, the state offered the hand-written statement as evidence under the theory of rebutting the presumption that she was not truthful. The appellant objected stating that it was hearsay. Tr. 162.

{¶56} During the closing argument, the state used the hand-written statement as substantive evidence:

... [He] admitted that if somebody grabbed someone's breast it would be offensive. I am submitting to you the testimony that you heard along with the two exhibits that you will have with you will help you in reaching your verdict.

{¶57} Tr. 196.

{¶58} It was error to admit the hand-written statement used for impeachment purposes for the jury's consideration. It was also error for the state to use it as substantive evidence during closing argument.

{¶59} The state cites Evid.R. 801(D)(1)(b) for the proposition that the statement was admissible to rebut a recent fabrication.

{¶60} Evid.R. 801(D)(1)(b) states in part:

A statement is not hearsay if: consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive.

{¶61} Evid.R. 801(D)(1)(b) is not applicable here. I.H. did not testify that appellant grabbed her boobs. She testified that appellant touched them with his finger and glided his hand across her breast when wiping food off her apron.

{¶62} Prior inconsistent statements are hearsay, admissible only for impeachment purposes. *State v. Robledo,* 2020-Ohio-5342, ¶ 32 (5th Dist.) citing *State v. McKelton,* 2016-Ohio-5735, ¶ 128.

{¶63} But the admission of hearsay evidence is harmless if there is substantial other evidence to support the guilty verdict. *State v. Webb,* 1994-Ohio-425, (holding that nonconstitutional error is harmless if there is substantial other evidence to support the guilty verdict).

{¶64} After reviewing the record including the testimony of I.H. and the testimony of appellant, we find that there was more than sufficient evidence to support appellant's conviction for sexual imposition.

{¶65} Appellant admitted to touching I.H.'s breast and buttocks inappropriately at least three times. The issue before the jury was whether it was done for sexual gratification, not whether the touching occurred. The admission of the prior written statement of I.H. was harmless error given the substantial other evidence to support the verdict.

**{¶66}** Appellant's third assignment of error is overruled.

### IV. Ineffective assistance of counsel

{¶67} In his fourth assignment of error, appellant argues that his trial counsel was ineffective for failing to object to the prosecutor's closing argument, in failing to request a jury instruction on the culpable mental state of purpose, and in failing to request a limiting instruction on the use of I.H.'s prior written statement.

{¶68} To prevail on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must meet the now familiar *Strickland* standard. To show deficiency, a defendant must show (1) that his trial counsel's representation fell below an objective standard of reasonableness and (2) that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694 (1984); *State v. Bradley,* 42 Ohio St.3d 136 (1989).

*Failure to object to closing argument*

{¶69} During closing argument, the state argued:

He has been in the country he said for sixteen years and he admitted that if somebody grabbed someone's breast it would be offensive. I am submitting to you the testimony that you heard along with the two exhibits that you will have with you will help you in reaching your verdict.

{¶70} Tr. 196.

{¶71} While trial counsel objected to the admission of the prior statement of I.H., he did not object to the state's closing argument. We have found that the admission of the prior statement of I.H. for the jury's consideration was error. So, too, the state's closing argument referring to the prior statement was error.

{¶72} However, we find that the results of the trial would not have been different. The jury was instructed that the evidence does not include the complaint, opening statements and closing arguments of counsel. Tr. 205.

*Jury instruction of culpable mental state*

{¶73} Appellant also argues that his trial counsel erred in failing to request a jury instruction on the culpable mental state. The jury instructions included a definition of recklessness. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. Tr. 208-209.

{¶74} Appellant was charged with sexual imposition in violation of R.C. 2907.06(A)(1).

> (A) No person shall have sexual contact with another, not the spouse
>
> of the offender ... when any of the following applies:
>
> (1) The offender knows that the sexual contact is offensive to the
>
> other person, or one of the other persons, or is reckless in that regard.

{¶75} The trial court did not give a definition of "purposely" as found in the definition of sexual contact. However, the trial court instructed the jury on the definition of sexual contact. Tr. 207-208. *State v. Huffman,* 2024-Ohio-889, ¶ 69 (11th Dist.) (jury instruction that "purpose" is an essential element of sexual imposition was not warranted.).

{¶76} We do not find that trial counsel was ineffective in failing to request a jury instruction on "purposely". The culpable mental state of reckless is set forth in the statute for sexual imposition.

*Limiting instruction on jury's use of I.H.'s prior statement*

{¶77} Appellant's trial counsel objected to the submission to the jury of I.H.'s prior statement but failed to request a limiting instruction on its use by the jury.

{¶78} We find that while a limiting instruction would have been appropriate, given the extra comments made in the statement that the wife knew he had done this before, it was reasonable trial strategy not to call attention to the contents of the statement.

{¶79} Trial counsel effectively argued to the jury that I.H.'s prior statement was not consistent with her trial testimony.

{¶80} We find that the outcome of the trial would not have been different if appellant's trial counsel had objected to the closing argument of the state or requested the jury instructions he now argues were relevant.

{¶81} The fourth assignment of error is overruled.

## V. Sentence

{¶82} In appellant's last assignment of error, he argues that the sentence he received was an abuse of discretion. Appellant was sentenced to twenty days in jail, fined $200, placed on probation for one year, and required to complete a mental health assessment.

{¶83} He argues that this sentence was an abuse of discretion given his age of 57 years and his lack of any criminal record.

{¶84} We find no abuse of discretion in the sentence imposed by the trial court. The trial court had full discretion to impose any sentence within the authorized statutory range. *State v. McCreary,* 2022-Ohio-2899, ¶ 11 (5th Dist.). The sentence was within the authorized range for a third-degree misdemeanor.

{¶85} Unfortunately, the collateral consequences of appellant's conviction are more onerous than the sentence imposed by the trial court – fifteen years on the sexual offender registry as a Tier One offender. The trial court, however, had no discretion in imposing the Tier One offender status.

{¶86} The fifth assignment of error is overruled.

## CONCLUSION

{¶87} Accordingly, the judgment of the Municipal Court of Licking County, Ohio, is affirmed.

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.

JWW/kt 0807